NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN SMITH<br><br>                Plaintiff,<br><br>   v.<br><br>CHURCH STREET CORPORATION, et al.,<br><br>                Defendants. | CIVIL NO. 06-966 (SRC)<br><br>**OPINION** |

**CHESLER, District Judge**

    **THIS MATTER** comes before the Court on a Motion to Dismiss for Failure to State a Cause of Action Upon Which Relief can be Granted (docket entry # 3) filed by the Defendants. The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, DENIES Defendants' Motion.

**I. BACKGROUND OF THE CASE**

    The Plaintiff, John Smith, is a resident at the McGrath Towers in Keansburg, New Jersey. The Plaintiff's building is administered by the Defendant, Church Street Corporation ("CSC"), which is a non-profit organization that provides federally subsidized housing to Section 8 low and moderate income tenants. Mr. Smith is a paraplegic, paralyzed from the waist down, who has resided in his current apartment since August 1980.

As a federally funded project-based housing project, CSC annually re-certifies all its housing tenants to ensure their continued eligibility for Section 8 housing and to ensure that the tenant is residing in an appropriately sized unit and that the appropriate rent is being charged for the unit.  Under the terms of Mr. Smith's lease with CSC, he is required to report all household members, and their income, upon request.  The terms of Mr. Smith's lease state that he is the sole resident approved to reside in his apartment, and that he is not to give accommodation to any roomers or lodgers.

In 2001, CSC began receiving reports that there was an unauthorized tenant in Mr. Smith's unit.  On September 21, 2001, CSC sent a letter to Mr. Smith reminding him that he must report all household members, as well as their incomes, to CSC.  In March 2004, CSC inventoried and re-issued keys for all the residents of the McGrath Towers.  Mr. Smith requested an additional set of keys for his unit, which he eventually acknowledged were for a co-tenant, Ms. Theodora Catena.

CSC conducted an investigation into Mr. Smith, claiming that he failed to report changes in his household composition or income since Ms. Catena began residing in his unit in 2001.  Mr. Smith contends that Ms. Catena is a live-in aide, rather than a resident, and that, pursuant to 24 C.F.R. § 5.609, her income is not to be included in the household income for federal assistance.  Because live-in aides are allowed to reside in the unit, Mr. Smith contends that Ms. Catena should not be treated as an additional resident.  CSC alleges that Mr. Smith has a romantic relationship with Ms. Catena and that she is not compensated for her services rendered to Mr. Smith.  CSC also claims that, by not reporting the presence of Ms. Catena in the unit, and by not reporting the income that Ms. Catena earns as a full-time employee of Bayshore Community Hospital, Mr. Smith was in material breach of his lease agreement.

On July 27, 2004, CSC served Mr. Smith with a Notice to Cease, requiring him to remove Ms. Catena from the unit, and to submit documentation regarding her income and years of residency to allow CSC to calculate back rent based on her additional income. On April 19, 2005, CSC instituted eviction proceedings against Mr. Smith in Monmouth County Superior Court.  On August 4, 2005, Mr. Smith filed suit in Monmouth County Superior Court against CSC, Defendant Roy Rogers, CSC's Executive Director, and the members of CSC's board of trustees (collectively "Defendants").  In his Complaint, Mr. Smith claims that the Defendants violated the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the New Jersey Law Against Discrimination ("NJLAD") by refusing him reasonable accommodations to allow him to have a live-in aide, engaging in retaliation for reporting the Defendants' violations of the ADA, and violating state landlord tenant law by commencing an eviction proceeding in retaliation for Mr. Smith's efforts to secure or enforce his rights.  On March 3, 2006, the Defendants removed this action to federal court pursuant to 28 U.S.C. § 1441(c).

## II. DISCUSSION

On March 15, 2006, the Defendants moved to dismiss this matter for failure to state a cause of action.  In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must presume that all allegations in the complaint must be taken as true and viewed in the light most favorable to the complainant.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). Because the Federal Rules of Civil Procedure require only notice pleading, the Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." FED. R. CIV. P. 8(a).  A motion to dismiss should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

The Defendants challenge the Plaintiff's claims in his Complaint as being "vague and overbroad." (Pl. Br. at 19.)  While the Plaintiff's Complaint in this matter is full of conclusory allegations against the Defendants, such as the assertion that "the actions of the Defendants constitute discriminatory housing practices" (Compl. at 5, ¶ 34), it is sufficient to meet the low threshold required for notice pleading under the Federal Rules.  Under notice pleading, "a plaintiff need not plead facts." Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir.2004).  Under this standard, "a plaintiff need only make out a claim upon which relief can be granted.  If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." Id.  See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (noting that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim.") The Plaintiff's Complaint does offer sufficient factual background for the his claims to place the Defendants on "fair notice of the Plaintiff's claims and the 'grounds on which it rests.'" In re Tower Air, Inc., 416 F.3d 229, 237 (3d Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

The remainder of the Defendants' challenges to the Plaintiff's Complaint rely on factual material which, to be considered, would require the Court to convert the Defendants' Motion to Dismiss into a Motion for Summary Judgment.  For example, in their papers, the Defendants contend that Ms. Catena does not qualify as Mr. Smith's live-in aide, because she "is also his girlfriend and quite possibly his wife." (Def. Br. at 25.)  To support the Defendants' additional

factual allegations of the possible romantic relationship between Mr. Smith and Ms. Catena, they point to sworn testimony of the Plaintiff as well as the claim that Ms. Catena's live-in aide certification lapsed in 1997. To consider this argument, however, would require the Court to consider additional factual material and arguments that are more appropriate for a Motion for Summary Judgment than a Motion to Dismiss.

The Court has the authority to convert the present motion into a Motion for Summary Judgment at its discretion. See FED.R.CIV.P. 12(b) (permitting court to convert Rule 12(b)(6)motion to motion for summary judgment); Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir.1992) (noting decision to convert a motion to dismiss into a summary judgment motion is entrusted to the district judge's discretion) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 1366, at 491 (1990)). In the present matter, however, the Court declines to do so at this early point in the litigation. This case remains in its early stages, and discovery has not been completed. At this point, it would be inappropriate for the Court to convert a pre-answer Motion to Dismiss into a Motion for Summary Judgment. See Childs v. Meadowlands Basketball Associates, 954 F.Supp. 994, 998 n.2 (D.N.J. 1997) (noting advisability of deferring on motions for summary judgment until discovery has been closed).

### III. CONCLUSION

For the reasons stated above, and for good cause shown, the Court **DENIES** Defendants' Motion to Dismiss. An appropriate form of order will be filed herewith.

Date:   May 8, 2006

                                                    s/Stanley R. Chesler
                                                    Stanley R. Chesler, U.S.D.J.